The next case for argument is Van Pelz v. Banks. You may proceed. Thank you. Good morning, Your Honors. Ken Miller on behalf of Mr. Van Pelz, and may it please the Court. I would like to focus on the issue that I focused on in the reply brief, and that is the retroactive or retrospective application of the Alleen case. The Alleen expands the liability for conspiracy, and therefore it can only be applied prospectively. In this case, the Van Pelz Court of Appeal relied on Alleen and applied it retroactively, and therefore that decision is contrary to Bowie v. City of Columbia. And it's contrary because Bowie stands for the proposition that a new case, a new rule that is unexpected and indefensible cannot be applied looking backwards, retroactively, in order to expand criminal liability. And I submit that Alleen is unexpected in that it holds that a conspiracy, a two-person conspiracy where one of the conspirators has died, the conspiracy continues. Have California ever said the contrary? I do not – I do not believe California has ever explicitly said the contrary. However, the case law has made it clear that you need two people for a conspiracy. Sure. To get one going, of course you do. You need two people to conspire. That's easy. And if you were in the Federal world, we'd say when the one person went, it's all over. It's not a conspiracy anymore. But who says there's anything illogical about saying it was a conspiracy? They entered into a conspiracy. The heart of the conspiracy is an agreement to do evil. He went out and did evil. Turns out his co-conspirator had not told him about it, but had withdrawn from the conspiracy. What's illogical about saying, fine, he did this pursuant to an agreement. There was a contract. The other side, without informing the other contracting party, decides not to go forward with it. I don't like retroactive stuff from legislatures especially, but we get it all the time, as you know. So I might agree with you on some philosophical level, but especially with courts, why is that ex post facto? Your Honor, it's ex post facto because it's unexpected and it's indefensible. It is not illogical. The Court is free to define conspiracy the way it wishes, but it needs to do it prospectively. When all the indications are from the California Court of Appeals and the California courts and the secondary authority in the California cases, that it takes two for a conspiracy and an overt act cannot further a conspiracy after the conspiracy has ended. So that when there's only one person left, there's no conspiracy left to further. It's not the question isn't logic or not. The question is notice, and that's what Bowie comes down to. When you look at the case. Didn't Bowie say, what was it, indefensible, unexpected, et cetera, et cetera. Indefensible, and if you think of the facts of Bowie, indefensible means you decided to do something really horrible in order to get these people, or it may mean. Indefensible means you can't defend it, doesn't it? Your Honor, and you can't defend this because if I can point out, what they relied on was Eberhardt. And Eberhardt stood for the proposition that you had two, you needed two people for a conspiracy. If one of them was immune, you could still have two people. The court said immune does not mean innocent. You still needed two people. Eberhardt recognized that. Jackson that Eberhardt relied on recognized that. All of the courts had recognized that you need two people. When you're down to one, you don't have the conspiracy anymore. So for Alleyne to say, well, Eberhardt suggests that if one of the, that you only have one person left, that's sufficient for a conspiracy, I submit that is indefensible. The second rationale that Alleyne relied on was the idea that the policy behind the conspiracy statute supports allowing an overt act to occur after you're down to one conspirator and that to be sufficient. Well, I would say that the policy behind the speed limit may support a 60-mile-an-hour speed limit rather than 65, but you can't do it after the fact. Your Honor, what I'm saying on the indefensible portion is the rationale that Alleyne relied on is indefensible. It does not, what the court relied on does not support it. Somebody sitting prior to the Alleyne decision looking at Eberhardt and looking at the cases that preceded it may have thought that the Alleyne decision could have been a great way to view conspiracy law, but it would not follow from the precedent. And in that, it is indefensible. And then the final issue. Counsel, Judge Gould, I have a question for you. Putting aside the retroactive issue for just a moment, before Mr. Thing withdrew from the conspiracy, did he commit, was there evidence that before he went over to the other side, he committed an overt act by trying to call the guy, I guess his name was Cave Pig? That is, did Thing take any action before he changed his mind? And if so, what's the significance of that for Van Pels? Your Honor, he claimed to have done it prior to the time that he withdrew from the conspiracy. So there was evidence of an overt act prior to his withdrawal. However, that evidence was contradicted at trial. They actually brought in the person that they said Thing called, and he said, Thing never called me. And they also brought in some phone records that undercut Thing's testimony. So the key was when the prosecutor stood up in closing argument, he said, well, you know, we've got these pre-withdrawal overt acts, but you don't need to rely on these, because these post-withdrawal overt acts are not contested. They are not contested. So he relied on it in his closing argument. And when the defendant's closing argument, he said, you can't rely on these post-withdrawal overt acts. The district attorney stood up and objected to that argument, saying that's an incorrect statement of the law. And then when it got time for the prosecutor's rebuttal argument, he came back around to that and said, you can rely solely on the post-withdrawal overt acts. So while there was evidence at trial, it was certainly not overwhelming, and the prosecutor didn't believe that the evidence was overwhelming. So that Van Pels was prejudiced by this retroactive application of the convenience of trial. With respect to, and I hope that Judge Gould, you were concluded with your questioning. Yes. Because I want to follow up on that particular issue, which is that you're referring to this withdrawal. Van Pels had no idea that there was a withdrawal. Correct. So when you're talking about post-withdrawal, pre-withdrawal, when it comes to Van Pels, there really wasn't one. So this was one continual act of the conspiracy in his mind, which was to cause harm to the officer through this connection that he had made. So I'm trying to see where you're showing that there's this withdrawal. And that was a unilateral withdrawal that Van Pels had no knowledge of. Right. In interpreting a retroactive, whether or not there's a retroactive violation, an improper ex post facto application of case law, the Court has to look at it objectively. You don't look subjectively at what Van Pels' thoughts were. The Supreme Court in Bowie counseled that we should not be looking at the subjective intent of the defendant. We should be looking at objectively did they change the rules on him, number one. Number two, Van Pels' testimony was he was not engaged in a conspiracy. So this conversation that I'm having and the way that I'm approaching this is completely objectively that we know Singh claims to have withdrawn. He claims to have at one time been a co-conspirator. Taking that at face value, that's how I'm looking at this. But Van Pels had always denied being a member of a conspiracy, so I wouldn't want that to be viewed as any sort of admission. And if I may reserve the balance of my time, I see I'm down to 20 seconds. Can you hear me? Thank you. Good morning, Your Honors. Anthony DaSilva, Deputy Attorney General for the Warden. May it please the Court. Aileen was not a radical or unforeseen departure from Eberhardt or California conspiracy law, if that's a test, Your Honors, because in Eberhardt in 1985, the California court held that a co-conspirator's prosecutorial immunity did not relieve the other conspirator's liability for conspiracy. Aileen applied the same factor, the same prosecutorial immunity argument to the death of a co-conspirator. In this case, we had an agreement and an overt act before Thing secretly withdrew, and secretly is important because under California law, withdrawal must be communicated to the other conspirator. The entire time Mr. Van Pels, what we'll call the pre-Thing secret withdrawal, the January overt acts, we had four that were alleged, which was the phone call to Cave Pig, and then a discussion between Van Pels and Mr. Thing about that phone call and his desire to have Officer Kane killed. Then there was a second phone call to Cave Pig, but apparently that didn't go through. Then there was another discussion between Van Pels and Mr. Thing about continuing with their agreement to kill Kane. At that point, Mr. Thing decides to get out of the conspiracy, doesn't tell Van Pels, and may have been assisting the government. Now, all the February overt acts were by Van Pels himself, and that's how they were alleged. Van Pels then continues to think that this agreement with the intent to commit the murder is ongoing, and so there are more phone calls and more arrangements, culminating finally where he's told to call back the next day at 10 a.m. because the murder would have allegedly occurred, and Mr. Van Pels, several minutes later, calls to make sure in his mind that the object of the conspiracy to murder had occurred. Unless this clerk has any questions, again, there is no radical or unforeseen departure, and Mr. Van Pels, again, continued to act as if the conspiracy was ongoing, and his overt acts continued, and the alleged withdrawal by Thing, as the prosecutor argued, had no legal effect under California law. I have a question, counsel. Yes, sir. I have a question for you, which is, is there any way to know what overt act was determined to have occurred by the jury? Your Honor, the jury must find beyond a reasonable doubt one overt act, but there is no unanimity requirement under California law. Okay, so, for example, is it possible in theory that the jury found an overt act by Thing trying to call Cave Pig? Now, I realize there was disputed testimony, but we have no special interrogatory resolving that, right? That is correct, Your Honor. So, as far as we know, the jury might have found that was an overt act. Yes, Your Honor. Then, if that's possible, what's the significance for us when we're reviewing under ADPA? Does that have any significance? No, Your Honor. I believe, again, it was not contrary to a reasonable application of any United States Supreme Court authority that I am aware of. The jury, still under California law, could have found any of the overt acts that were alleged, as long as they found even the ones by Van Pels, that would have been enough to support the conspiracy conviction. Okay, thank you. Thank you, Your Honor. Unless this Court has any questions, I will submit. Thank you, Counsel. Thank you, Your Honor. And, again, unless this Court has any questions, I will submit as well. All right. Thank you, Counsel. Thank you. This case will stand submitted. It's time we thank both counsels for their argument.
judges: Fernandez, Gould, England